UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY M. OAKES,

                Plaintiff,

v.                                              5:15-CV-1246
                                                       (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

FOULKE LAW FIRM                         E. KENTON FOULKE, ESQ.
  Counsel for Plaintiff
5 Court St.
Auburn, NY 13021

U.S. SOCIAL SECURITY ADMIN.            SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 11.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Jeffrey M. Oakes ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was 36 years old at the time of the hearing. (T. 40.) He completed the 11th grade. (T. 42.) Generally, Plaintiff's alleged disability consists of bipolar disorder, obsessive compulsive disorder ("OCD"), anxiety, paranoia, and chronic tic disorder. (T. 218.) His alleged disability onset date is March 6, 2009. (T. 86.) His date last insured is March 31, 2014. (*Id.*) He previously worked as a pool service tech, curb finisher, machine operator, and a laborer. (T. 24.)

### B. Procedural History

On February 17, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 86.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 24, 2014, Plaintiff appeared before the ALJ, Angela Miranda. (T. 30-85.) On February 28, 2014, ALJ Miranda issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-29.) On August 14, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-26.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2014 and Plaintiff had not engaged in substantial gainful activity since March 6, 2009. (T. 17.) Second, the ALJ found that Plaintiff had the severe impairments of tobacco use disorder with asthma, residual effect of remote back injury with obesity, and mental impairments described variously as bipolar, generalized anxiety disorder, polysubstance dependence in remission and antisocial personality traits. (T. 17-18.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-20.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional postural, environmental and mental limitations. (T. 20.)[1] Specifically, the ALJ found that Plaintiff:

> has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. [Plaintiff] has the capacity to frequently push and pull up to the weight capacity for lifting and carrying. [Plaintiff] has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. Considering [Plaintiff's] reports of his remote back injury and the limiting effects of his obesity, [Plaintiff] has the capacity to frequently stoop and crouch; and to occasionally kneel, crawl, and climb stairs and ramps. [Plaintiff] has no limitations in manipulative abilities. Considering [Plaintiff's] asthma and despite his continuing use of tobacco products, [Plaintiff] should have only occasional exposure to dust, fumes, and other pulmonary irritants while in the workplace. Considering [Plaintiff's] subjective complaints of fatigue and mental distraction, [Plaintiff] should have only occasional exposure to

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

workplace hazards such as unprotected heights, machinery with fast moving parts, or power tools. Despite [Plaintiff's] complaints of mental distraction, fatigue, and cycling of his mood, mentally [Plaintiff] has the capacity to understand, remember, and carry out simple, routine tasks. In so doing, [Plaintiff] has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. [Plaintiff] has the capacity to appropriately interact with supervisors, coworkers, and the general-public. [Plaintiff] has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-26.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings. Plaintiff argues the ALJ erred by failing to give controlling weigh to the medical opinion of Plaintiff's treating psychiatrist, Abbas Ispahani, M.D. (Dkt. No. 9 at 7-14 [Pl.'s Mem. of Law].)[2]

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues that substantial evidence supported the finding that Plaintiff's impairments would not preclude him from performing work subject to the significant restrictions as assessed in the RFC finding. (Dkt. No. 10 at 5-15 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

---

[2] Plaintiff cites to the Regulations at 20 C.F.R. § 416.927(d)(2) throughout his brief. (Dkt. No. 9 [Pl.'s Mem. of Law].) The "treating physician rule" is now located at 20 C.F.R. §§ 404,1527(c)(2), 416.927(c)(2). The change was effective March 26, 2012, due to a regulatory change that did not affect the substantive language of that section of the Regulation. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012).

4

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

6

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received mental health medication management and treatment from Dr. Ispahani with the Cayuga County Mental Health Center. Dr. Ispahani began treating Plaintiff in 2010. (T. 310.) Records indicated that Plaintiff was receiving medication services only, which Dr. Ispahani felt was appropriate. (T. 387.)

On November 12, 2013, Dr. Ispahani completed a medical source statement at the request of the Social Security Administration. (T. 395-397.) Therein, he opined Plaintiff had no limitations in his ability to understand and remember short, simple instructions. (T. 395.) He opined Plaintiff had a "slight" limitation in his ability to carry out short, simple instructions. (*Id.*)[3] Dr. Ispahani opined that Plaintiff had a "moderate" limitations in his ability to: understand and remember detailed instructions; carry out

---

[3] "Slight" is defined as "some mild limitation in this area, but the individual can generally function well." (T. 395.) "Moderate" is defined as "the individual is still able to function satisfactorily." (*Id.*) "Marked" is defined as "ability to function is severely limited, but not precluded." (*Id.*)

7

detailed instructions; and make judgments on simple work-related decisions."  (*Id.*)  Dr. Ispahani provided the following narrative: "[c]ognitive deficits related to mood disorder persist despite strident medication management, has shown unsatisfactory response." (*Id.*)

Dr. Ispahani further opined in November of 2013, that Plaintiff had a "slight" limitation in his ability to interact appropriately with the public.  (T. 396.)  Dr. Ispahani opined that Plaintiff had "moderate" limitations in his ability to: interact appropriately with supervisors and interact appropriately with co-workers.  (*Id.*)  He opined that Plaintiff had "marked" limitations in his ability to: respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting.  (*Id.*)  Dr. Ispahani provided the following narrative: "[t]he patient has considerable psychomotor retardation with cognitive deficits."  (*Id.*)  Dr. Ispahani stated that Plaintiff had a past history of substance abuse, but had been abstinent for "over 30 months." (*Id.*)

On December 9, 2013, Dr. Ispahani completed a medical source statement at Plaintiff's request.  (T. 391-393.)  Dr. Ispahani opined that Plaintiff had "mild" limitations in his ability to understand, remember, and carry out simple instructions.  (T. 391.)[4]  He opined that Plaintiff had a "marked" limitation in his ability to make judgments on simple work-related decisions.  (*Id.*)  Dr. Ispahani opined that Plaintiff had an "extreme" limitation in his ability to: understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions.  (*Id.*)  In

---

[4] "Mild" is defined as "there is a slight limitations in this area, but the individual can generally function well."  (T. 391.)  "Moderate" is defined as "more than a slight limitations in this area but the individual is still able to function satisfactorily."  (*Id.*)  "Marked" is defined as a "serious limitation in this area.  There is substantial loss in the ability to effectively function."  (*Id.*)  "Extreme" is defined as a "major limitation in this area.  There is no useful ability to function in this area."  (*Id.*)

a narrative, Dr. Ispahani wrote: "[t]he patient had been under active psychiatric treatment for bipolar disorder for over [four] years. He had shown a partial response to multiple combinations of medication regiment though somewhat improved he has ongoing severe sleep impairment along with severe cognitive dysfunctions in areas of attention span, working memory and concertation." (*Id.*)

In his November of 2013 statement, Dr. Ispahani opined that Plaintiff had "moderate" limitations in his ability to interact appropriately with the public. (T. 392.) He opined that Plaintiff had "marked" limitations in his ability to: interact appropriately with supervisors and interact appropriately with co-workers. (*Id.*) Dr. Ispahani opined Plaintiff had "extreme" limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*) Dr. Ispahani stated: "[a]ttention span limited, memory limited, concentration limited – causes increase irritable reactivity with loss of executive function." (*Id.*) Dr. Ispahani further stated that Plaintiff's emotional state varied from slight to increased reactivity, which was not controlled. (*Id.*) Dr. Ispahani noted Plaintiff was sober for nearly four years. (*Id.*)

On August 9, 2012, Plaintiff underwent a consultative psychiatric examination. (T. 356-359.) On examination, Dennis Noia, Ph.D., observed Plaintiff was responsive and cooperative. (T. 357.) Dr. Noia noted that Plaintiff's overall social skills and presentation were adequate. (*Id.*) Dr. Noia observed that Plaintiff's thought processes were coherent and goal directed. (T. 358.) He further observed that Plaintiff was calm; his affect was congruent; his sensorium was clear; and he was oriented. (*Id.*) Dr. Noia noted that Plaintiff's attention and concentration were intact; his memory skills were "moderately impaired," and his intellectual functioning appeared to be average. (*Id.*)

In a medical source statement, Dr. Noia opined that Plaintiff was capable of understanding and following simple instructions and directions. (T. 358.) He opined that Plaintiff appeared capable of performing simple and some complex tasks with supervision and independently. (*Id.*) Dr. Noia stated Plaintiff was capable of maintaining attention and concentration for tasks, regularly attend to a routine, and maintain a schedule. (*Id.*) Dr. Noia further opined Plaintiff was capable of: learning new tasks; making appropriate decisions; relating and interacting "moderately" well with others; and dealing with stress. (T. 359.)

Plaintiff essentially argues that the ALJ's mental RFC determination was not supported by substantial evidence and the product of legal error because the ALJ failed to provide more weight to Dr. Ispahani's opinion and instead relied on the opinions of the examining and non-examining medical consultative examiners. (Dkt. No. 9 at 7-14 [Pl.'s Mem. of Law].) Plaintiff does not raise issue with the ALJ's physical RFC assessment and determination.

Here the ALJ afforded Dr. Ispahani's November statement "some weight." (T. 23.) The ALJ reasoned that the opinion was inconsistent with treatment evidence showing improvement. (*Id.*) The ALJ also reasoned that Plaintiff's conservative care, and the medical opinion of Dr. Noia, supported slight limitations in the ability to carry out simple instructions. (*Id.*) The ALJ stated that Dr. Ispahani's opinion, that Plaintiff had moderate limitations in his ability to make simple decisions, was outweighed by Plaintiff's ability to attend treatment and remain sober. (*Id.*) Further the ALJ determined that Dr. Ispahani's opinion, that Plaintiff had moderate limitations dealing with supervisors, was not supported because Plaintiff was cooperative with treatment and

got along with his family. (*Id.*) Lastly, the ALJ reasoned that Dr. Ispahani's opinion, that Plaintiff had marked limitation in responding to work pressure and changes in a routine, was not supported by Plaintiff's ability to attend treatment sessions and meetings. (*Id.*)

The ALJ afforded Dr. Ispahani's December statement "limited weight." (T. 23.) The ALJ reasoned that the record failed to indicate any changes between November and December which would result in a change in the doctor's opinion. (*Id.*) The ALJ further reasoned that Plaintiff's mental status examinations remained stable and his treatment was conservative. (*Id.*) The ALJ also afforded less weight to the December statement because it was "directly procured by [Plaintiff's] representative." (T. 24.)

The ALJ afforded "significant weight" to Dr. Noia's opinion. (T. 24.) The ALJ reasoned that the opinion was supported by his examination, Plaintiff's sustained sobriety, and conservative treatment. (*Id.*)

As an initial matter, Plaintiff argues that the ALJ violated the treating physician rule in affording more weight to consultative examiner, Dr. Noia, than treating physician, Dr. Ispahani. (Dkt. No. 9 at 13-14 [Pl.'s Mem. of Law].) This argument is without merit. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *see Monette v. Colvin*, No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *see Snyder v. Colvin*, No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016); *see Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016). However, for the reasons stated herein, the ALJ erred in her assessment of Dr. Ispahani's opinions.

11

First, the ALJ's analysis of Dr. Ispahani's opinions was based on a narrow reading of the record. Although the record indicated that some of Plaintiff's symptoms improved with conservative care, Dr. Ispahani stated that "[h]e has shown a partial response to multiple combinations of medication regimens - though somewhat improved [Plaintiff] has ongoing severe sleep impairment along with severe cognitive dysfunctions in areas of attention span, working memory and concentration." (T. 391.)

Indeed, from December 2010 to December 2013 almost every treatment notations entered by Dr. Ispahani reported poor, unrestful sleep, and often that Plaintiff did not sleep for two to three days straight. (*see generally* T. 310-323, 365-373, 388-390.) Further, Dr. Ispahani also stated that Plaintiff's emotional state was not controlled with medication. (T. 392.) This observation was supported by the numerous medical records from Dr. Ispahani that indicated medication changes over the course of treatment. (*see generally* T. 310-323, 365-373, 388-390.) Although some symptomology may have improved with treatment, Plaintiff's poor sleep, fatigue, and "emotional state" did not. The ALJ concluded that Plaintiff made "significant progress" with mental health and substance abuse treatment; however, the ALJ failed to provide specific evidence in the record to support this assertion. (T. 24.) Therefore, the ALJ's conclusion that Dr. Ispahani's opinions were not supported by Plaintiff's improvement was based on too narrow a reading of the record because the record showed, and Dr. Ispahani stated, that any improvement was partial and not all of Plaintiff's symptoms were improved.

Second, the ALJ emphasized mental status examinations indicating Plaintiff was "stable" to undermine Dr. Ispahani's opinions. (T. 22-24.) The ALJ dismissed Plaintiff's

12

sleep difficulties, reasoning that despite such difficulties his mental status examinations in 2013 were "stable." (T. 22.) The ALJ relied on Plaintiff's "stable" condition to undermine Dr. Ispahani's December statement. (T. 23.) In her conclusion the ALJ again noted "stable" mental status examinations, which she equated as "benign." (T. 24.) Here, the ALJ interprets "stable" to mean good or normal; however, Dr. Ispahani's notations, which accompanied mental status examinations findings of "stable," appear to mean his condition was unchanged. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) ("the ALJ consistently interprets reports that Kohler's condition has been stable to mean that Kohler's condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level"). Therefore, the ALJ's reliance on "stable" mental status examination was misplaced.

Third, the ALJ emphasized that Dr. Ispahani's December statement was less credible because it was completed at the request of Plaintiff's representative. (T. 24.) However, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report." *Gunter v. Comm'r of Social Security,* 361 F. App'x 197, 198 n. 2 (2d Cir. 2010) (quoting *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir.1998)). To be sure, the ALJ did not discount the December statement on this factor alone; however, the ALJ appears to rely heavily on this factor. Further, the other reasons provided for discounting Dr. Ispahani's statements were based on a narrow reading of the record and therefore the ALJ's reliance on the source of Dr. Ispahani's statement was not a harmless error.

13

Lastly, although the ALJ properly characterized Plaintiff's daily living activities, she did not give good reasons for finding them inconsistent with Dr. Ispahani's opinions. For example, although the ALJ correctly noted that Plaintiff was cooperative with treatment and had a good relationship with his parents, she failed to explain how this was inconsistent with Dr. Ispahani's opinion Plaintiff had limitations dealing with supervisors. (T. 23); *see Cortright v. Colvin*, No. 13-CV-5422, 2014 WL 4384110, at *12 (S.D.N.Y. Aug. 29, 2014) (ALJ failed to explain how plaintiff's ability to get along with family was inconsistent with treating physician's opinion that plaintiff had limitations interacting with supervisors). Also, the ALJ reasoned that Plaintiff's ability to attend treatment meetings to maintain sobriety undercut Dr. Ispahani's opinion that Plaintiff had marked limitations in his ability to respond to work pressure and changes in a routine work setting. (*Id.*) It is unclear from the ALJ's decision how Plaintiff's attendance at sobriety meetings equates to an ability to handle workplace stress and changes in work routine. Essentially, the ALJ failed to explain how Plaintiff's ability to get along with his parents and go to treatment translated into an ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting. *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) ("The ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment.").

To be sure, all of the medical sources in the record provided statements indicating that Plaintiff could understand, remember, and carry out simple instructions. (T. 358, 391, 395.) However, the medical opinions diverged significantly regarding

14

Plaintiff's ability to interact appropriate with supervision, co-workers, and the public, as well as respond to changes in the routine work setting.

Remand is recommended because the ALJ's overall assessment of Dr. Ispahani's statements was based on a narrow reading of the record and further, the ALJ failed to provide adequate explanations for discrediting the social limitations provided for by Dr. Ispahani. Although an ALJ is entitled to resolve conflicts in the record, her discretion is not so wide as to permit her to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

It is also recommended that the ALJ re-contact Dr. Ispahani for clarification. To be sure, the Social Security Administration changed its Regulations in 2012 to reduce the situations in which an ALJ must re-contact medical providers; however, the Regulations still contemplate the ALJ re-contacting a treating source when additional information is needed related directly to that source's opinion. *See* 77 FR 10651 ("there are times when we would still expect adjudicators to recontact a person's medical source first; that is, when recontact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source.") Because Dr. Ispahani provided two medical source statements dated within a month of each other that contained differing limitations, and the ALJ

heavily relied on these discrepancies in affording Dr. Ispahani's opinion less than controlling weight, it is recommended that the ALJ contact Dr. Ispahani for clarification.[5]

**ACCORDINGLY, based on the findings above, it is**

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:	January 18, 2017

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge

---

[5] Dr. Ispahani's opinions not only contained discrepancies in limitations imposed, but factual discrepancies as well. For example, the in November statement Dr. Ispahani wrote in the narrative section that his patient suffered from "cognitive deficits related to mood disorder." (T. 395.) A review of the record failed to show that Plaintiff was diagnosed with a "mood disorder." Further, the November statement indicated the patient suffered from "considerable psychomotor retardation with cognitive deficits." Again, a review of the record failed to indicate that Plaintiff suffered from psychomotor retardation. Lastly, the November statement indicated patient had been abstinent for over "30 months." (T. 396.) As of November 2013 Plaintiff had been sober for approximately four years. However, Dr. Ispahani's December statement referred to patient's "bipolar disorder" and "severe sleep impairment." (T. 391.) Plaintiff's medical record is replete with diagnoses and treatment for bipolar and sleep impairment. The December statement also indicated that the patient was "totally abstinent for nearly 4 years," which is consistent with Plaintiff's sobriety timeline. As this matter is being recommended for remand, it may be prudent to inquire as to the factual inconsistencies as well.